Matter of Hoffmann v New York State Ind. Redistricting Commission (2023 NY Slip Op 03828)

Matter of Hoffmann v New York State Ind. Redistricting Commission

2023 NY Slip Op 03828

Decided on July 13, 2023

Appellate Division, Third Department

Garry, P.J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 13, 2023

CV-22-2265 

[*1]In the Matter of Anthony S. Hoffmann et al., Appellants,
v
New York State Independent Redistricting Commission et al., Respondents.

Calendar Date:June 8, 2023

Before: Garry, P.J., Egan Jr., Pritzker, Reynolds Fitzgerald and McShan, JJ. 

Elias Law Group, LLP, Washington, DC (Aria C. Branch of counsel, admitted pro hac vice), for appellants.
Jenner & Block LLP, Washington, DC (Jessica Ring Amunson of counsel, admitted pro hac vice), for Ken Jenkins and others, respondents.
Perillo Hill, LLP, Sayville (Timothy F. Hill of counsel), for Ross Brady and others, respondents.
Troutman Pepper Hamilton Sanders LLP, New York City (Misha Tseytlin of counsel), for Timothy Harkenrider and others, intervenors.
Letitia James, Attorney General, New York City (Andrea W. Trento of counsel), for the Governor and another, amici curiae.
Covington & Burling LLP, New York City (P. Benjamin Duke of counsel), for Scottie Coads and others, amici curiae.

Garry, P.J.
Appeal from a judgment of the Supreme Court (Peter A. Lynch, J.), entered September 14, 2022 in Albany County, which, in a proceeding pursuant to CPLR article 78, granted certain respondents' motions to dismiss the amended petition.
This CPLR article 78 proceeding involves the same factual circumstances as those that gave rise to Matter of Harkenrider v Hochul (38 NY3d 494 [2022]). Given the import of that prior proceeding to the mandamus relief sought here, those circumstances merit a rather lengthy discussion. Every 10 years, following each federal census, reapportionment of the senate, assembly and congressional districts in New York must be undertaken (see NY Const, art III, § 4). The power to draw those district lines was historically reserved to the Legislature, and, "[p]articularly with respect to congressional maps, exclusive legislative control has repeatedly resulted in stalemates, with opposing political parties unable to reach consensus on district lines" (Matter of Harkenrider v Hochul, 38 NY3d at 502). "[I]n response to criticism of [that] scourge of hyper-partisanship" (id. at 514), the People of the State of New York amended the NY Constitution in 2014 to reform the redistricting process, both procedurally and substantively, ushering in "a new era of bipartisanship and transparency" (id. at 503). This reform established respondent Independent Redistricting Commission (hereinafter the IRC) to draft the electoral maps. Most basically, the 2014 constitutional amendments charge the IRC with the obligation to prepare a redistricting plan and submit that plan, with appropriate implementing legislation, to the Legislature for a vote without amendment (see NY Const, art III, §§ 4 [b]; 5-b [a]). If that first plan is rejected, the IRC is required to prepare a second plan and the necessary implementing legislation that, again, would be subject to a vote by the Legislature without amendment (see NY Const, art III, § 4 [b]). Only upon rejection of that second plan may the Legislature, under the constitutional procedure, "amend[ ]" the maps drawn by the IRC (NY Const, art III, § 4 [b]). Any such legislative amendments are then statutorily limited to those that would affect no more than two percent of the population in any district (see L 2012, ch 17, § 3).
The 2020 federal census provided the first opportunity for the IRC to carry out its constitutionally-mandated duties. In the midst of that redistricting cycle, however, the Legislature attempted to amend the constitutional procedure and authorize itself to introduce redistricting legislation "[i]f . . . the [IRC] fails to vote on a redistricting plan and implementing legislation by the required deadline" (2021 NY Senate-Assembly Concurrent Resolution S515, A1916). Voters rejected that proposed amendment. Thereafter, in 2021, the Legislature enacted similar modifications to the constitutional redistricting process by statute (see L 2021, ch 633). The IRC submitted its first redistricting [*2]plan to the Legislature on January 3, 2022 — before its January 15, 2022 deadline to do so (see NY Const, art III, § 4 [b]). Because the IRC had reached an impasse, it submitted the two maps that had garnered equal IRC support (see NY Const, art III, § 5-b [g]). On January 10, 2022, the Legislature rejected both of those maps, triggering the IRC's constitutional obligation to prepare and submit a second redistricting plan within 15 days and "in no case later than February [28, 2022]" (NY Const, art III, § 4 [b]). The IRC became deadlocked, and, on January 24, 2022, it announced that it would not be submitting a second redistricting plan to the Legislature. Shortly thereafter, the Legislature, invoking its 2021 legislation, composed new senate, assembly and congressional maps, which were signed into law on February 3, 2022.
The litigation in Harkenrider commenced immediately. The petitioners in that case argued, as relevant here, that the Legislature's 2022 enactment of congressional and senate maps was in contravention of the constitutional process (Matter of Harkenrider v Hochul, 38 NY3d at 505).[FN1] Ultimately, the Court of Appeals agreed that the enactment was procedurally unconstitutional (id. at 508-517).[FN2] To remedy that procedural violation, the Court concluded that "judicial oversight [wa]s required to facilitate the expeditious creation of constitutionally conforming maps for use in the 2022 election and to safeguard the constitutionally protected right of New Yorkers to a fair election" (id. at 502). It then "endorse[d] the procedure directed by Supreme Court [(McAllister, J.)] to 'order the adoption of . . . a redistricting plan' (NY Const, art III, § 4 [e]) with the assistance of a neutral expert, designated a special master, following submissions from the parties, the [L]egislature, and any interested stakeholders who wish to be heard" (Matter of Harkenrider v Hochul, 38 NY3d at 523). Supreme Court complied with that directive, and, after a public hearing and receipt of substantial public comment, the court certified the congressional and senate maps prepared by a special master as "the official approved 2022 [c]ongressional map and the 2022 [s]tate [s]enate map" (Matter of Harkenrider v Hochul, 2022 NY Slip Op 31471[U], *4 [Sup Ct, Steuben County 2022]). The court subsequently made minor revisions to those maps and ordered that the maps, as modified, are "the final enacted redistricting maps" (Matter of Harkenrider v Hochul, Sup Ct, Steuben County, June 2, 2022, McAllister, J., index No. E2022-0116CV, NYSCEF doc. No. 696).
Petitioners thereafter commenced this CPLR article 78 proceeding to compel the IRC "to prepare and submit to the [L]egislature a second redistricting plan and the necessary implementing legislation for such plan . . . in order to ensure a lawful plan is in place . . . for subsequent elections this decade" (quotation marks omitted).[FN3]
Initially, we reject the alternative ground for affirmance that this proceeding is untimely. The 2021 legislation in effect at the time of the IRC's failure to submit a second redistricting plan to the Legislature provided that, "[i]f the [IRC] does not vote on any redistricting plan or plans, for any reason, by the date required for submission of such plan, the [IRC] shall submit to the [L]egislature all plans in its possession, both completed and in draft form, and the data upon which such plans are based," and that each house must then "introduce such implementing legislation with any amendments each house deems necessary" (see L 2021, ch 633, § 1). In this CPLR article 78 proceeding, petitioners seek strict compliance with the constitutionally enshrined IRC procedure, which does not tolerate a nonvote. Thus, that claim accrued when the 2021 legislation was deemed unconstitutional to the extent that it permitted the Legislature "to avoid a central requirement of the reform amendments" (Matter of Harkenrider v Hochul, 38 NY3d at 517), a determination first made by Supreme Court (McAllister, J.) on March 31, 2022. Petitioners commenced this proceeding on June 28, 2022, well within the period in which to do so (see CPLR 217 [1]).
In support of their claim for mandamus relief, petitioners argue that, under the plain language of the NY Constitution, the IRC has a nondiscretionary duty to submit a second set of redistricting plans to the Legislature if its first set of plans is rejected by legislative vote. Petitioners assert that Harkenrider exclusively addressed the Legislature's constitutional violations and, thus, did not remedy the IRC's failure to perform that duty. They further claim that, because the court-ordered congressional map adopted in Harkenrider was merely an interim map for the purpose of the 2022 elections, they have a clear legal right to the performance of that duty.
Against the backdrop of the 2014 redistricting reforms, these arguments are compelling. As the sponsors explained, the reforms were intended "to achieve a fair and readily transparent process" and "ensure that the drawing of legislative district lines in New York will be done by a bipartisan, independent body" (Assembly Mem in Support, 2012 NY Senate-Assembly Concurrent Resolution S6698, A9526; Senate Introducer's Mem in Support, 2013 NY Senate-Assembly Concurrent Resolution S2107, A2086). The carefully crafted constitutional process was further meant to enable, "[f]or the first time, [*3]both the majority and minority parties in the [L]egislature [to] have an equal role in the process of drawing lines" (Assembly Mem in Support, 2013 NY Senate-Assembly Concurrent Resolution S2107, A2086). "Just as important, the enactment of the constitutional amendment" was intended to "give the voters of New York a voice in the adoption of this new process and[,] by enshrining it in the constitution, ensure that the process will not be changed without due considerations" (Assembly Mem in Support, 2013 NY Senate-Assembly Concurrent Resolution S2107, A2086). These "far-reaching" constitutional reforms were anticipated to "set the standard for independent redistricting throughout the United States" (Assembly Mem in Support, 2013 NY Senate-Assembly Concurrent Resolution S2107, A2086). Instead, the reforms were thwarted, and these goals were not met. As petitioners' counsel repeatedly asserted at oral argument, this proceeding seeks to "vindicate the purpose" of the redistricting amendments.
In addition to evaluating the various constitutional provisions cited to by the parties, we are now in the uncomfortable position of discerning what the Court of Appeals intended by its silence regarding the critical issue of the duration relative to the judicial remedy it imposed. We are necessarily limited in our ability to infer such intention in this delicate and highly charged matter of significant public concern. As certain respondents, and the dissent here, assert, there is a clear default duration for electoral maps provided for in the NY Constitution: "[a] reapportionment plan and the districts contained in such plan shall be in force until the effective date of a plan based upon the subsequent decennial census taken in a year ending in zero unless modified pursuant to court order" (NY Const, art III, § 4 [e]).
Petitioners urge that the Court of Appeals was endeavoring simply to expediently provide a remedy for the immediately pressing needs of the 2022 election, pointing to various phrases within the Harkenrider decision. Indeed, the Court succinctly stated at the outset of its decision that the maps being ordered would be "for use in the 2022 election" (Matter of Harkenrider v Hochul, 38 NY3d at 502). It is repeated later that the state was left "without constitutional district lines for use in the 2022 primary and general elections" (id. at 521). Underscoring the urgency, there is then considerable discussion of the need to move the 2022 primaries (id. at 522-523). Ultimately, the subject map was certified as the "2022 [c]ongressional map" (Matter of Harkenrider v Hochul, 2022 NY Slip Op 31471[U] at *4 [emphasis added]); this could equally refer to the year in which the map was adopted, effective or limited to. Most persuasively, throughout its decision, the Court continuously emphasized that the 2014 amendments "were carefully crafted to guarantee," or "ensure," "that redistricting maps have their origin in the collective and transparent work product [*4]of a bipartisan commission" (Matter of Harkenrider v Hochul, 38 NY3d at 513, 514 [emphasis added]). It is apparent that, due to the then-fast-approaching 2022 election cycle, there was a reason to forgo the overarching intent of the amendments. The majority in Harkenrider concluded by acknowledging the guiding principle that the NY Constitution is "the will of the people of this state" and that it intended to adhere to that will in disposing of the matter before it (id. at 524). We too must be guided by the overarching policy of the constitutional provision: broad engagement in a transparent redistricting process.
Crucially, the same provision giving the default duration for electoral maps also limits the degree to which judicial remediation should influence the redistricting process: "[t]he process for redistricting congressional and state legislative districts established by [the redistricting amendments] shall govern redistricting in this state except to the extent that a court is required to order the adoption of, or changes to, a redistricting plan as a remedy for a violation of law" (NY Const, art III, § 4 [e] [emphasis added]). The Court of Appeals, as it emphasized in Harkenrider, was required to fashion a remedy that would provide valid maps in time for the 2022 elections, and it did so (see Matter of Harkenrider v Hochul, 38 NY3d at 522). To interpret the Court's decision as further diverting the constitutional redistricting process, such that the IRC cannot now be called upon to do its duty, would directly contradict this express limiting language in the provision that grants the courts the power to intervene. Simply put, the Court was not "required" to divert the constitutional process beyond the then-imminent issue of the 2022 elections. For these several reasons, in the complete absence of any explicit direction, we decline to infer that the Court intended its decision to have further ramifications than strictly required. Accordingly, we do not conclude that Harkenrider forecloses the relief now sought by petitioners.
Mandamus to compel lies where an administrative body has failed to perform a duty enjoined upon it by law, the performance of said duty is ministerial and mandatory, rather than discretionary, and there is a clear right to the relief sought (see New York Civ. Liberties Union v State of New York, 4 NY3d 175, 184 [2005]; Matter of Hussain v Lynch, 215 AD3d 121, 125-126 [3d Dept 2023]). Discretionary acts involve the exercise of judgment that may produce different and acceptable results (see Tango v Tulevech, 61 NY2d 34, 41 [1983]; see also Alliance to End Chickens as Kaporos v New York City Police Dept., 32 NY3d 1091, 1093 [2018], cert denied ___ US ___, 139 S Ct 2651 [2019]).
The IRC had an indisputable duty under the NY Constitution to submit a second set of maps upon the rejection of its first set (see NY Const, art III, § 4 [b]). The language of NY Constitution, article III, § 4 makes clear that this duty is [*5]mandatory, not discretionary. It is undisputed that the IRC failed to perform this duty. Further, we agree with petitioners that Harkenrider left unremedied the IRC's failure to perform its duty to submit a second set of maps. There were two questions posed before the Court of Appeals in Harkenrider, neither of which addressed the IRC's duty (Matter of Harkenrider v Hochul, 38 NY3d at 501-502). The challenge brought and the remedy granted were directed at the Legislature's unconstitutional reaction to the IRC's failure to submit maps, rather than the IRC's failure in the first instance (see id. at 505-506; Matter of Harkenrider v Hochul, 76 Misc 3d 171, 173 [Sup Ct, Steuben County 2022], mod 204 AD3d 1366 [4th Dept 2022], affd 38 NY3d 494 [2022]). Harkenrider addresses the IRC's inaction solely by way of factual background, and the IRC's discrete failure to perform its constitutional duty was left unaddressed until this proceeding.[FN5] Indeed, the fact that the deadline for the IRC's submission had passed influenced the practicalities of the remedy fashioned in Harkenrider; the only way to prepare valid maps for the 2022 election, at that time, was through judicial creation of those maps (see Matter of Harkenrider v Hochul, 38 NY3d at 523). To hold today that the passing of the deadline leaves petitioners with no remedy would render meaningless the distinct consitutional command that the IRC create a second set of maps.
In light of the foregoing, petitioners have demonstrated a clear legal right to the relief sought. This determination honors the consitutional enactments as the means of providing a robust, fair and equitable procedure for the determination of voting districts in New York.[FN6] The right to participate in the democratic process is the most essential right in our system of governance. The procedures governing the redistricting process, all too easily abused by those who would seek to minimize the voters' voice and entrench themselves in the seats of power, must be guarded as jealously as the right to vote itself; in granting this petition, we return the matter to its constitutional design.[FN7] Accordingly, we direct the IRC to commence its duties forthwith.
Reynolds Fitzgerald and McShan, JJ., concur.
Pritzker, J. (dissenting).
We respectfully dissent because, initially, we find the proceeding untimely and would affirm on this alternate ground. In addition, substantively and contrary to the majority's conclusions, it is our opinion that the Court of Appeals in Matter of Harkenrider v Hochul (38 NY3d 494 [2022]) remedied the refusal of respondent Independent Redistricting Commission (hereinafter the IRC) to perform its duty, and, further, that the court-ordered congressional map is not interim but, rather, final and otherwise in force until after the 2030 census. Since the map is final, there is no longer a ministerial duty for the IRC to perform and therefore mandamus cannot lie. Moreover, public policy and the spirit of the 2014 constitutional [*6]amendments do not support the notion that the IRC should get a mandamus mulligan. Significantly, the judicial redistricting plan has been found to be competitive — although perhaps too competitive for some (see Michael Li & Chris Leaverton, Gerrymandering Competitive Districts to Near Extinction, Brennan Center for Justice [Aug. 11, 2022], available at https://www.brennancenter.org/our-work/analysis-opinion/gerrymandering-competitive-districts-near-extinction [last accessed July 6, 2023] [noting that, in New York, under the court-ordered redistricting maps, "almost one in five seats are competitive, [which is] the highest percentage in the country for a large state"]). For these reasons, we would affirm Supreme Court's dismissal of the petition.
First, we turn our attention to the issue of timeliness. For purposes of a mandamus proceeding, pursuant to CPLR 217 (1), "a proceeding against a body or officer must be commenced within four months . . . after the respondent's refusal, upon the demand of the petitioner or the person whom he [or she] represents, to perform its duty" (see Matter of EZ Props., LLC v City of Plattsburgh, 128 AD3d 1212, 1215 [3d Dept 2015]). As relevant here, "[a] petitioner . . . may not delay in making a demand in order to indefinitely postpone the time within which to institute the proceeding. The petitioner must make his or her demand within a reasonable time after the right to make it occurs, or after the petitioner knows or should know of the facts which give him or her a clear right to relief, or else, the petitioner's claim can be barred by the doctrine of laches. The term laches, as used in connection with the requirement of the making of a prompt demand in mandamus proceedings, refers solely to the unexcused lapse of time and does not refer to the equitable doctrine of laches" (Matter of Granto v City of Niagara Falls, 148 AD3d 1694, 1695 [4th Dept 2017] [internal quotation marks, brackets and citations omitted; emphasis added]; see Matter of Sheerin v New York Fire Dept. Arts. 1 & 1B Pension Funds, 46 NY2d 488, 495-496 [1979]). "Th[is] reasonable time requirement for a prompt demand should be measured by CPLR 217 (1)'s four-month limitations period, and thus, a demand should be made no more than four months after the right to make the demand arises" (Matter of Zupa v Zoning Bd. of Appeals of Town of Southold, 64 AD3d 723, 725 [2d Dept 2009] [citations omitted]). In certain instances, the commencement of a proceeding pursuant to CPLR article 78 constitutes a demand (see Matter of Butkowski v Kiefer, 140 AD3d 1755, 1756 [4th Dept 2016]; Matter of Gopaul v New York City Employees' Retirement Sys., 122 AD3d 848, 849 [2d Dept 2014]).
Here, we must determine when it was reasonable for petitioners to demand that the IRC act and, therefore, when the statute of limitations accrued. As to the relevant time frame, on January 3, 2022, the IRC submitted the two plans to the Legislature that were rejected on January 10, 2022[*7]. Thereafter, the IRC was unable to come to a consensus regarding a second proposal and, on January 24, 2022, announced that it would not be submitting a second proposal. The Legislature began to draft its own plan, which was enacted on February 3, 2022. The Harkenrider proceeding was commenced that same day. On May 20, 2022, Supreme Court (McAllister, J.) issued the final order therein establishing the new state senate and congressional districts. On June 28, 2022, petitioners commenced the instant proceeding seeking to compel the IRC to submit a second proposed congressional redistricting plan to the Legislature. In our view, under black letter mandamus jurisprudence, it was no later than January 24, 2022 that "petitioner[s] kn[ew] or should [have] know[n] of the facts which [gave them] a clear right to relief" (Matter of Granto v City of Niagara Falls, 148 AD3d at 1695 [internal quotation marks and citation omitted]). However, petitioners did not make a demand until June 28, 2022, when they commenced this proceeding, over a month past the running of the four-month statute of limitations set forth in CPLR 217 (1). As such, "petitioner[s] unreasonably delayed in making the demand and . . . this proceeding is barred by laches" (Matter of Densmore v Altmar-Parish-Williamstown Cent. School Dist., 265 AD2d 838, 839 [4th Dept 1999], lv denied 94 NY2d 758 [2000]; see Matter of Granto v City of Niagara Falls, 148 AD3d at 1696; Matter of van Tol v City of Buffalo, 107 AD3d 1626, 1627 [4th Dept 2013]; Matter of Schwartz v Morgenthau, 23 AD3d 231, 233 [1st Dept 2005], affd 7 NY3d 427 [2006]; compare Matter of Speis v Penfield Cent. Schs., 114 AD3d 1181, 1183 [4th Dept 2014]; Matter of Selective Ins. Co. of Am. v State of N.Y. Workers' Compensation Bd., 102 AD3d 72, 76-77 [3d Dept 2012]).[FN8]
Briefly, we reject the alternate theories that have been advanced in this case as to when the statute of limitations accrued. First, it is true that NY Constitution, article III, § 4 (b) provides that, if the initial redistricting plan is rejected by the Legislature, the IRC, "[w]ithin [15] days of such notification and in no case later than February [28th], . . . shall prepare and submit . . . a second redistricting plan."[FN9] Here, however, this February 28 date has no relevance or application inasmuch as, on January 24, the IRC announced that it would not submit a second plan. Moreover, the 15-day period to act after legislative rejection ended on January 25. Additionally, when the Legislature passed its own redistricting plan on February 3, the IRC lost its ability to on its own propose a second redistricting plan to the Legislature. As such, the February 28 date is a red herring. Further, we disagree with the majority's assertion that the statute of limitations did not accrue until the gap-filling legislation of 2021 was declared unconstitutional.[FN10] To that end, the gap-filling legislation purported to allow the Legislature to draw its own maps, "if the [IRC] does not [*8]vote on any redistricting plan or plans, for any reason, by the date required for submission of such plan" (L 2021, ch 633, § 1). Significantly, this legislation did not excuse the IRC from "its constitutional obligations" to propose a second plan, which is precisely what petitioners, and the majority, claim is the "the procedural violation at issue in this case." However, this harm would exist even if the gap-filling legislation was found constitutional because this legislation caused the same injury asserted in this mandamus proceeding, usurping the role of the IRC and enacting maps prior to the IRC offering a second plan. Thus, even if the gap-filling legislation had been found constitutional, it would have no bearing whatsoever on petitioners' assertion that the IRC failed to perform its constitutionally mandated duty by neglecting to submit a second congressional map, which triggered the mandamus relief requested herein and set the accrual date.[FN11] As unlikely as it sounds, the gap-filling legislation should simply have led petitioners to be aligned with the Harkenrider petitioners, at least as to the need for IRC action before a final map is drawn by the Legislature.
Moving to the merits, even if the proceeding was timely, we would still affirm Supreme Court's dismissal of the petition based upon substantive infirmities. At the outset, we reject petitioners' contention, with which the majority agrees, that the court-ordered congressional map is interim — in place only for the purpose of the 2022 elections — rather than in place until after the 2030 census. Indeed, determination of this issue is crucial as the mandamus relief sought is hard-tethered to the duration of the relief ordered in Harkenrider. To that end, we disagree with the majority's position that the Court of Appeals, in Harkenrider, left us "in the uncomfortable position of discerning what the Court of Appeals intended by its silence regarding the critical issue of the duration relative to the judicial remedy it imposed." To the contrary, the plain language of the NY Constitution provides the duration in clear terms. "The process for redistricting congressional and state legislative districts [established by NY Constitution, article III, §§ 4, 5 and 5-b] shall govern redistricting in this state except to the extent that a court is required to order the adoption of, or changes to, a redistricting plan as a remedy for a violation of law. A reapportionment plan and the districts contained in such plan shall be in force until the effective date of a plan based upon the subsequent decennial census taken in a year ending in zero unless modified pursuant to court order" (NY Const, art III, § 4 [e]). The Court of Appeals directly cited to, and thereby incorporated, this section when discussing and approving the judicially drawn maps ordered by Supreme Court; "[t]hus, we endorse the procedure directed by Supreme Court to 'order the adoption of . . . a redistricting plan' " (Matter of Harkenrider [*9]v Hochul, 38 NY3d at 523, quoting NY Const, art III, § 4 [e]). Notably, there is no caveat nor limitation as to duration and, as such, it is our opinion that the Constitution requires that such court-ordered maps remain in place until after the next census (see NY Const, art III, § 4 [e]). More to the point, the courts could have — yet did not — expressly order that the plan adopted in Harkenrider be interim and only remain in place until the IRC took action and implemented a legislative plan that met constitutional requirements following the 2022 election (see e.g. Ely v Klahr, 403 US 108, 110-111 [1971]; Honig v Board of Supervisors of Rensselaer County, 24 NY2d 861, 862 [1969]).
From a common sense point of view, we find the meaning clear and it is implausible to assert that any of the members of the Court of Appeals would leave the voters to grapple with an issue of this magnitude.[FN12] Moreover, this view is also supported by Judge Troutman's reasoned dissent, wherein she raised the concern that the plan "may" be in place "for the next 10 years" (Matter of Harkenrider v Hochul, 38 NY3d at 527 [Troutman, J., dissenting]).[FN13]
Further, if it were an interim order, presumably there would be a directive that the IRC reconvene and the consititutionally mandated redistricting process begin anew after the one-year period. Indeed, it is well "recognize[d] that a congressional districting plan will usually be in effect for at least 10 years and five congressional elections" (Kirkpatrick v Preisler, 394 US 526, 533 [1969]), much as there is a strong public policy in favor of the finality of elections (see generally Matter of Lichtman v Board of Elections of Nassau County, 27 NY2d 62, 66 [1970]). So too should there be a strong public policy in favor of the finality of the establishment of electoral districts, as "[l]imitations on the frequency of reapportionment are justified by the need for stability and continuity in the organization of the legislative system" (Reynolds v Sims, 377 US 533, 583 [1964]).
Next, we disagree with the majority's conclusion that the remedy in Harkenrider failed to address the IRC's refusal to submit a second set of redistricting maps to the Legislature.[FN14] To the contrary, it is our opinion that the Court of Appeals quite clearly considered and addressed the IRC's constitutional violation, specifically its refusal to act, which is the precise injury alleged herein. The majority decision in Harkenrider rejected the State respondents' request for a chance to repair the legislation at issue and explained that "[t]he procedural unconstitutionality of the congressional and senate maps is, at this juncture, incapable of a legislative cure. The deadline in the Constitution for the IRC to submit a second set of maps has long since passed" (Matter of Harkenrider v Hochul, 38 NY3d at 523 [emphasis added]). As such, the Court of Appeals, in considering a legislative fix, rejected same in part because, in their view, it was too late for the [*10]IRC to act. Further, the Court framed one of the petitioners' arguments, with which the Court agreed, as an assertion "that, in light of the lack of compliance by the IRC and the [L]egislature with the procedures set forth in the Constitution, the [L]egislature's enactment of the 2022 redistricting maps contravened the Constitution" (Matter of Harkenrider v Hochul, 38 NY3d at 508-509 [emphasis added]). Thus, the failure of the IRC to act, which is the limited subject of the instant mandamus proceeding, was considered and in fact is part and parcel of the Court of Appeals' finding of procedural constitutional infirmity infecting the 2022 maps.
In that same vein, from a conceptual point of view, simply put, the judicially adopted remedy in Harkenrider was authorized and, while perhaps not the only permissible remedy, and clearly not petitioners' preferred remedy, it repaired the procedural and substantive infirmities in a manner directly set forth in the NY Constitution (NY Const, art III, § 4 [e]). Indeed, during oral argument the judges of the Court of Appeals asked many probing questions concerning the different remedies available and the dissenting judges proposed different legislative remedies. In fact, the utility of crafting a legislative remedy under NY Constitution, article III, § 5-b was discussed at length and served as part of the basis for Judge Troutman's dissent, which would have required the "[L]egislature to adopt either of the two plans that the IRC has already approved pursuant to [NY Constitution, article III, §] 5-b (g)" (Matter of Harkenrider v Hochul, 38 NY3d at 525 [Troutman, J., dissenting]). In this regard, NY Constitution, article III, § 5-b (a) permits the IRC to reconvene outside the every 10-year period when "a court orders that congressional . . . districts be amended" in response to a successful legal challenge to a map, such as reestablishing the IRC to amend a map to address a violation of the Voting Rights Act due to the failure to include a minority district (see generally Thornburg v Gingles, 478 US 30 [1986]). Although this provision is not applicable to the instant proceeding because it was not utilized by petitioners as a basis for relief, and, more significantly, because petitioners are seeking a new map rather than an amended one, the significance of the Court of Appeals' attention to this provision in Harkenrider is only to demonstrate that it did specifically contemplate reestablishing the IRC.
The foregoing leads us to our ultimate conclusion that petitioners are not entitled to the extraordinary remedy of mandamus. As discussed above, the Court of Appeals was presented with alternative remedies in Harkenrider, including that posed by petitioners, and elected to have a special master establish a redistricting plan to be implemented by court order. To that end, from a mandamus perspective, the issue is not whether petitioners' requested relief is ever constitutionally available, but rather whether same [*11]may be mandated in the aftermath of a judicial redistricting. It is our view that the judicial remedy cured the IRC's failure to act by lawfully establishing a redistricting plan for the ordinary duration, leaving no uncured violation of law and thus foreclosing mandamus. Although it is not unreasonable for petitioners to wish for a different remedy, this bald desire falls well short of the standard required to mount a successful mandamus proceeding. To wit, "[a] writ of mandamus is an extraordinary remedy that is available only in limited circumstances" (Alliance to End Chickens as Kaporos v New York City Police Dept., 32 NY3d 1091, 1093 [2018] [internal quotation marks and citations omitted], cert denied ___ US ___, 139 S Ct 2651 [2019]; see Matter of Hussain v Lynch, 215 AD3d 121, 125-126 [3d Dept 2023]). A petitioner seeking mandamus to compel "must have a clear legal right to the relief demanded and there must exist a corresponding nondiscretionary duty on the part of the administrative agency to grant that relief" (Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 757 [1991]; accord Matter of Mental Hygiene Legal Serv., Third Jud. Dept. v Delaney, 38 NY3d 1076, 1096 [2022, Rivera, J., dissenting]). "The duty must be positive, not discretionary, and the right to its performance must be so clear as not to admit of reasonable doubt or controversy" (Matter of Burr v Voorhis, 229 NY 382, 387 [1920]; see Matter of Thornton v Saugerties Cent. Sch. Dist., 145 AD3d 1138, 1140 [3d Dept 2016], lv denied 29 NY3d 902 [2017]).
Therefore, in light of our opinion that the court-ordered congressional map is final and in place until after the 2030 census, as well as our opinion that the Court of Appeals has already addressed the IRC's refusal to submit a second set of redistricting maps to the Legislature, we do not believe that, presently, the IRC is duty bound to perform any act until after the next census, let alone a ministerial act. Consequently, because a valid court-ordered congressional map has been established and remains in place, it is our opinion that petitioners did not satisfy their burden of demonstrating a clear legal right to compel the IRC to propose a second redistricting plan for consideration by the Legislature (see generally Matter of League of Women Voters of N.Y. State v New York State Bd. of Elections, 206 AD3d 1227, 1230-1231 [3d Dept 2022], lv denied 38 NY3d 909 [2022]; Matter of Barone v Dufficy, 186 AD3d 1358, 1360 [2d Dept 2020]; Matter of Ethington v County of Schoharie, 173 AD3d 1504, 1505 [3d Dept 2019]; Matter of Thornton v Saugerties Cent. Sch. Dist., 145 AD3d at 1141; compare Matter of Eidt v City of Long Beach, 62 AD3d 793, 795 [2d Dept 2009]). Accordingly, as petitioners are not entitled to the extraordinary remedy of mandamus, Supreme Court did not err in dismissing the petition on this basis.
There is likely no disagreement that a properly conducted and constitutionally mandated legislative [*12]redistricting process with the bipartisan involvement of the IRC would have, at least in theory, been preferable to resorting to litigation and judicially drawn maps. However, since the IRC failed in this regard, it was necessary to resort to Plan B, the safety valve designed to remedy political stalemate, which took the form of a judicially drawn congressional map. Although we agree with petitioners that the court-ordered congressional map is not perfect, and that such flaws may raise legitimate concerns, if these concerns are substantial, they can be challenged. However, and aside from our opinion that mandamus is legally unavailable, the goals of the 2014 constitutional amendments have in fact been met by way of the operation of the constitutional safety valve resulting in maps that appear competitive. This is, after all, the raison d'etre behind the 2014 constitutional amendments, which nobly tried to address gerrymandering for what it is — cheating. We have great faith that our independent judicial branch of government will continue to remedy constitutional violations, which has already been done here, and, at the same time, steadfastly enforce the rule of law. In conclusion, we say let the legislative process roll once again — but this time in conformity with the 2014 constitutional amendments — after the 2030 census.
Egan Jr., J., concurs.
ORDERED that the judgment is reversed, on the law, without costs, and petition granted.

Footnotes

Footnote 1: The assembly map was not challenged in Harkenrider (Matter of Harkenrider v Hochul, 38 NY3d at 521 n 15). That map was the subject of subsequent litigation (Matter of Nichols v Hochul, 212 AD3d 529 [1st Dept 2023], appeal dismissed 39 NY3d 1119 [2023]).

Footnote 2: It further held that the 2022 congressional and senate maps were unconstitutionally gerrymandered in favor of the majority party (Matter of Harkenrider v Hochul, 38 NY3d at 518-520).

Footnote 3: Petitioners originally sought relief with respect to both the congressional and senate maps, but their amended pleading pertains to the congressional map only. Certain IRC commissioners answered indicating that they did not oppose the relief [*13]sought by petitioners. Other commissioners, along with the Harkenrider petitioners — who are intervenors here — moved to dismiss the proceeding, foremost arguing that the redistricting process based upon the 2020 federal census is complete and that the congressional map generated by that process governs all elections until the redistricting process begins anew following the 2030 federal census. Supreme Court (Lynch, J.) agreed, dismissing the petition, and petitioners appeal.[FN4] This Court granted two applications for leave to file amici curiae briefs: one by the Governor and the Attorney General and one by several voters, including the Civil Engagement Chair of the New York State Conference of the National Association for the Advancement of Colored People and two of the plaintiffs from Favors v Cuomo (2012 WL 928223, 2012 US Dist LEXIS 36910 [ED NY 2012]), litigation that challenged the Legislature's redistricting process following the 2010 federal census and resulted in a federal court ordering the adoption of a 2012 judicially-drafted congressional redistricting plan. The amici support granting the relief requested by petitioners.

Footnote 5: It follows that this proceeding does not consitute a collateral attack on that determination; we are merely addressing a discrete and previously unaddressed issue in a proceeding brought by different parties.
Footnote 6: We disagree with Supreme Court's characterization of petitioner's relief as "provid[ing] a path to an annual redistricting process," as the right to compel the IRC to submit a second set of redistricting maps will be exhausted once it has done so. We further note that the IRC's inability to reach consensus was subsequently overcome relative to the assembly maps (see generally New York Independent Redistricting Commission, NYIRC Assembly 2023, available at https://www.nyirc.gov/storage/plans/20230420/assembly_plan.pdf [last accessed July 6, 2023]).

Footnote 7: Our dissenting colleagues cite to a publication by the Brennan Center for Justice analyzing the most recent redistricting cycle nationwide (see Michael Li & Chris Leaverton, Gerrymandering Competitive Districts to Near Extinction, Brennan Center for Justice [Aug. 11, 2022], available at https://www.brennancenter.org/our-work/analysis-opinion/gerrymandering-competitive-districts-near-extinction [last accessed July 6, 2023]). We are happy to note that this analysis reveals that the highest percentage of competitive districts emerge from court-drawn maps and, unsurprisingly, that one-party control results in a much smaller percentage of competitive districts (see Li & Leaverton). It further bears noting that the analysis concludes that, "[i]f Americans hope to reverse the long-term decline of competitive districts, reforms to create fairer, more independent map-drawing processes will be essential" (Li & Leaverton). This was the aim of the 2012-2014 Legislature, and we find that it created a path to be followed now, rather than waiting until the next decade.

Footnote 8: Certainly, the unreasonableness of petitioners' delay in commencing this action is evident given that the Harkenrider petitioners' filing of a 67-page, 226-paragraph petition on February 3, 2022, just over one week after the IRC announced it would not be submitting a second redistricting plan and the same day the Legislature enacted its own plan. Indeed, from a laches point of view, it is reasonable to conclude that the delay was due to petitioners having favored the gerrymandered legislative maps, rather than the failure of the IRC to act.

Footnote 9: The plain language of this section establishes that the IRC has 15 days to prepare a second plan. The February 28 deadline does not extend this time frame, but rather is the final date for preparation of a second plan, even if that date does not provide the IRC with 15 days to prepare a second plan.

Footnote 10: Although the majority does not discuss and explicitly reject the timeliness analysis of Supreme Court (Lynch, J.), its analysis implicitly does so. We are also unpersuaded by the court's timeliness analysis.

Footnote 11: In fact, the Court of Appeals noted in Harkenrider that mandamus could be one of the avenues of a voter aggrieved by IRC inaction (38 NY3d at 515 n 10). Of course, the proceeding would need to be timely (see CPLR 217 [1]).

Footnote 12: We are also unpersuaded that it can be gleaned from the decisions in Harkenrider that the court-ordered congressional map only be used for the 2022 election cycle (see Matter of Harkenrider v Hochul, 38 NY3d 494; Matter of Harkenrider v Hochul, 204 AD3d 1366 [4th Dept 2022]; Matter of Harkenrider v Hochul, 76 Misc 3d 171 [Sup Ct, Steuben County 2022]). Although these decisions refer generally to the "2022 election" and the "2022 maps" (see id.), these references are not determinative, but rather are references to the next scheduled election for which the court-ordered maps would of course apply. Moreover, as pointed out by the majority, Supreme Court, after minor revisions to the maps were made, ordered that they are "the final enacted redistricting maps" (Matter of Harkenrider v Hochul, Sup Ct, Steuben County, June 2, 2022, McAllister, J., index No. E2022-0116CV, NYSCEF doc. No. 696).

Footnote 13:Judge Troutman's use of the word "may" does not imply that the plan endorsed by the Court of Appeals is interim. Although the default duration for the redistricting maps is 10 years (see NY Const, art III, § 4 [e]), the duration is subject to other potentially successful challenges during the 10-year period, such as federal litigation under the Voting Rights Act (42 USC § 1973). Additionally, had the majority intended the plan to be interim, surely Judge Troutman's colleagues would have explained this to her and presumably clarified this issue in the majority decision, allaying her concerns in this regard and alleviating the need to dissent on this point. In other words, if the plan were interim, there would be no need to be concerned with a 10-year term — nor would there be much ado arising from a one-year sunsetting order.

Footnote 14: We do, however, agree that the manner in which the Court of Appeals addressed the IRC's failure to submit a second redistricting map is not the remedy now requested by petitioners.