*357 OPINION OF THE COURT
Hancock, Jr., J.
 This appeal involves the validity and applicability of a State Uniform Fire Prevention and Building Code (Code) provision requiring an enclosure of at least four feet in height around residential outdoor swimming pools (9 NYCRR 1243.7 [f]).[1] There are two questions: (1) whether the State Fire Prevention and Building Code Council has the authority to promulgate the pool enclosure regulation; and, if so, (2) whether the statutory exemption for buildings constructed prior to the Code’s effective date applies to swimming pools. For the reasons stated herein, we conclude that the Council did not exceed its legislatively delegated authority in issuing this regulation, and that the statutory exemption for pre-Code buildings is inapplicable to swimming pools. There should, accordingly, be a reversal.
I
Respondent Tarquini owns an 18-acre residential property in the Town of Aurora. In 1982, Tarquini constructed an unenclosed outdoor swimming pool on his property. Thereafter, the State Fire Prevention and Building Code Council promulgated the State Uniform Fire Prevention and Building Code (9 NYCRR part 600 et seq.) which became effective on January 1, 1984. The new Code included the pool enclosure regulation at issue here (9 NYCRR 1243.7 [f]). Tarquini never built the required enclosure.
In February 1988, the Town of Aurora commenced an enforcement proceeding pursuant to Executive Law §382 against Tarquini and other residential pool owners who were not in compliance with the pool enclosure regulation. Supreme Court ruled in the Town’s favor, rejecting Tarquini’s argument that the regulation did not apply to pools constructed prior to the regulation’s effective date. During the pendency of the enforcement proceeding, Tarquini sought a variance from the Buffalo/Rochester Uniform Code Board of Review. When the Board of Review denied his variance request, Tarquini commenced an article 78 proceeding against both the Town and the Board of Review challenging that *358 determination. The Appellate Division, with two Justices dissenting,[2] reversed Supreme Court’s judgment in the enforcement proceeding and dismissed the article 78 proceeding as moot, concluding that the Council lacked the power to promulgate the pool enclosure regulation.
II
Whether the Council had the authority to promulgate the pool enclosure regulation turns on interpretation of the New York State Uniform Fire Prevention and Building Code Act (Executive Law §§ 370-383). The Board of Review asserts that Executive Law § 378 (2) authorizes the regulation in question. Tarquini counters by arguing that section 378 (2) only permits the Council to promulgate regulations in regard to the hazards of fire and toxic gases and that, therefore, it does not authorize the pool enclosure regulation which has no connection with those hazards.
Section 378 (2) provides:
"The uniform code shall address the following subjects:
"Standards for the condition, occupancy, maintenance, conservation, rehabilitation and renewal of certain existing buildings, structures and premises and for the safeguarding of life and property therein and thereabout from the hazards of fire, explosion or release of toxic gases arising from the storage, handling or use of combustible or hazardous substances, materials or devices.”
In interpreting section 378 (2), we must first " Took to the particular words for their meaning, both as they are used in the section and in their context as part of the entire statute.’ ” (Matter of Ellington Constr. Corp. v Zoning Bd. of Appeals, 77 NY2d 114, 121; Price v Price, 69 NY2d 8, 13.) A fair reading of section 378 (2) reveals that its first part authorizes the Council to establish standards regarding "the condition, occupancy, maintenance, conservation, rehabilitation and renewal of certain existing buildings, structures and premises” (emphasis added) and its second part authorizes the *359 promulgation of regulations with respect to the hazards of fire and toxic gases. The section’s legislative history and the circumstances surrounding its adoption confirm that it serves these two distinct purposes.
Section 378 (2) essentially tracks Executive Law former § 391 (l).[3] Under the terms of that prior provision, there is no question that the Legislature authorized the previous State Building Code Council to promulgate general regulations relating to existing buildings, structures and premises as well as regulations relating to the specific hazards of fire and toxic gases. The Legislature passed section 378 (2) in 1981 as part of the New York State Uniform Fire Prevention and Building Code Act (Executive Law §§ 370-383). Enacted in response to a series of tragic fires that had occurred in New York and elsewhere, the legislation was designed to reconcile and consolidate existing fire prevention and structural regulations into a single, uniform code in order to provide a minimum level of protection for citizens throughout the State (Executive Law §371 [2] [b]; see, Governor’s Approval Mem, L 1981, ch 707, 1981 McKinney’s Cons Laws of NY, at 2610). There is no indication in either the act’s statement of legislative findings and purposes, or in its legislative history, that the Legislature intended to limit the reach of section 378 (2) to the specific hazards of fire and toxic gases (see, Executive Law § 371; Governor’s Approval Mem, op. cit.; Budget Rep on Bills, Bill Jacket, L 1981, ch 707). We accordingly reject Tarquini’s argument that section 378 (2) only authorizes regulations involving those specific hazards.
Tarquini maintains that even if section 378 (2)’s application is not limited to the hazards of fire and toxic gases, the section does not authorize the pool enclosure regulation because a swimming pool is not a structure under the act, notwithstanding that a swimming pool is defined as a structure in the Code (9 NYCRR 606.3 [a] [187]). We disagree. Section 378 (2) autho *360 rizes the Council to establish "[standards for the condition [and] maintenance * * * of certain existing buildings, structures and premises” (emphasis added). Although the terms "premises” and "structures” are not defined in the act, the Code defines premises as "[a] lot, plot or parcel of land including the building or structures thereon” (9 NYCRR 606.3 [a] [151]), and structure as "[a]n assembly of materials, forming a construction framed of component structural parts for occupancy or use, including buildings” (9 NYCRR 606.3 [a] [185]). The Code’s definitions of premises and structure are consonant with the generally accepted meanings of these terms (see, Webster’s New Twentieth Century Dictionary 1420, 1806 [2d ed 1979]). Indeed, Tarquini suggests no alternative meanings. We therefore conclude that a swimming pool — an assembly of materials framed of component parts and situated on a parcel of land (9 NYCRR 606.3 [a] [151], [185]) — comes under the "structures and premises” language of section 378 (2).
Finally, Tarquini contends that even if section 378 (2) permits general building and structural regulations, it does not authorize safety regulations such as the pool enclosure requirement, the purpose of which is to obviate hazards unrelated to fire or toxic gases. This argument also fails. Many of the standard Building Code provisions involve safety concerns having little or no apparent connection with the hazards of fire or toxic gases. Indeed, the Code abounds with such regulations (see, e.g., 9 NYCRR 713.1 [f] [requiring handrails or railings on stairs]; 1242.2 [b] [3] [directing electric lighting on stairs]; 1242.6 [mandating railings or parapet walls on the open sides on balconies, mezzanines, and porches]; 1243.9 [a] [elevator, dumbwaiter, and escalator safety]; 1244.1 [b] [fences and exterior walls must be maintained in safe condition]; see also, 9 NYCRR 713.1 [e]; 1242.1 [a] [4]; 1242.2 [b] [1]; 1243.7 [e] [1]). It is not suggested that these traditional Building Code requirements are unauthorized. The regulation requiring enclosure of swimming pools is no different from these other traditional regulations which are designed to prevent injuries from falls and other accidents unrelated to the hazards of fire and toxic gases. Accordingly, we conclude section 378 (2) authorized the Council to promulgate it.
III
Tarquini’s alternative contention is that, if the pool *361 enclosure regulation is valid, the act exempts from the regulation swimming pools, such as his, which were built prior to January 1, 1984. The exemption provision applies to buildings constructed or under construction prior to that date (see, L 1981, ch 707, § 19).[4] The act defines building as "a combination of any materials, whether portable or fixed, having a roof, to form a structure affording shelter for persons, animals or property” (Executive Law § 372 [3] [emphasis added]). A swimming pool is clearly not a building as defined in the act, and the exemption provision, therefore, does not apply.
Accordingly, in Matter of Tarquini v Town of Aurora the judgment of the Appellate Division should be reversed and the matter remitted for consideration of issues not reached by that court, and in Matter of Town of Aurora v Tarquini the order of the Appellate Division should be reversed, and the judgment of Supreme Court, Erie County, reinstated.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Bellacosa concur.
In Matter of Tarquini v Town of Aurora: Judgment reversed, with costs, and matter remitted to the Appellate Division, Fourth Department, for consideration of issues not reached by that court.
In Matter of Town of Aurora v Tarquini: Order reversed, with costs, and judgment of Supreme Court, Erie County, reinstated.

. 9 NYCRR 1243.7 (f) states: "An approved enclosure, at least four feet in height, shall be provided around outdoor swimming pools, so that such pools are inaccessible to children. The enclosure may surround either the pool area or the property.”

. The dissenters urged that the Council had the power to promulgate the pool enclosure regulation, and that the exemption provision for buildings constructed prior to the Code’s effective date was inapplicable to swimming pools.

. Executive Law former § 391 (1) provided: "The state building code council created pursuant to article eighteen of this chapter, after consultation and review by the secretary of state to the extent hereinafter provided, is hereby authorized and empowered to promulgate rules and regulations relating to the condition, occupancy, maintenance, conservation, rehabilitation and renewal of certain existing buildings, structures and premises and to the safeguarding of life and property therein and thereabout and from the hazards of fire, explosion or release of toxic gases arising from the storage, handling or use of combustible or hazardous substances, materials or devices. Such rules and regulations shall comprise and be collectively known as the state building conservation and fire prevention code.”

. The exemption provision states: "Notwithstanding any other provisions of this act, the provisions of article eighteen of the executive law provided for in section one of this act shall not be applicable to any building constructed or under construction prior to the first day of January, nineteen hundred eighty-four, until the legislature by law expressly provides for financial incentives and assistance for the implementation of such provisions and their applicability to such buildings provided, however, that this section shall not apply to any provision of such article eighteen which is substantially similar to any provision of a code, general, special or local law, or ordinance to which an existing building was subject immediately prior to the effective date of such article.”