Matter of Clements v New York Secretary of State (2024 NY Slip Op 01756)

Matter of Clements v New York Secretary of State

2024 NY Slip Op 01756

Decided on March 28, 2024

Appellate Division, Third Department

McShan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 28, 2024

CV-22-2099

[*1]In the Matter of Keionzie Clements, Appellant, et al., Petitioners,
v
New York Secretary of State, Respondent.

Calendar Date:January 18, 2024

Before: Egan Jr., J.P., Clark, Lynch, McShan and Mackey, JJ.

Legal Assistance of Western New York, Inc., Ithaca (David A. Kagle of counsel), for appellant.
Letitia James, Attorney General, Albany (Dustin J. Brockner of counsel), for respondent.
Legal Services of the Hudson Valley, White Plains (Marcie Kobak of counsel) and Center for Elder Law & Justice, Buffalo (Kevin M. Quinn of counsel) and Legal Services of Central New York, Oswego (Kenneth B. Ehresman of counsel) and Legal Services of Northeastern New York, Plattsburgh (Tara Glynn of counsel), for United Tenants of Albany and others, amici curiae.

McShan, J.
Appeal from a judgment of the Supreme Court (Adam W. Silverman, J.), entered October 3, 2022 in Albany County, which, in a proceeding pursuant CPLR article 78, granted respondent's motion to dismiss the petition.
In June 2021, petitioner Keionzie Clements filed a code enforcement complaint with the Village of Dryden concerning her rental apartment located in the Village of Dryden, Tompkins County. Clements alleged, among other things, that the apartment's bathroom sink was on the floor, the bathroom fan exhausted into the kitchen and the apartment showed evidence of water leaks and mold. Code enforcement officials for the Village conducted two inspections of the premises, one in June and another in September 2021, and found several violations of the Property Maintenance Code of New York State (see 19 NYCRR part 1226) — one of the codes comprising the New York State Uniform Fire Prevention and Building Code (see 19 NYCRR 1219.1 [hereinafter the Uniform Code]). On both occasions, officials issued an order to remedy to the building's landlord, who took no action to remedy the deficient conditions. Subsequently, a periodic fire inspection of Clements' building was performed in October 2021, identifying the same code violations in her apartment, and an order to remedy was again issued to her landlord. The conditions remained unremedied, and based upon the findings from the periodic fire inspection, the Village issued an order at the end of October 2021 directing all occupants to vacate within four days, finding the premises to be a "clear and imminent danger to the life or health of occupants."
Thereafter, petitioners, who consist of Clements and other individuals who resided in the same building, commenced this CPLR article 78 proceeding, alleging, among other things, that respondent had failed to comply with his mandatory duty to promulgate regulations governing the quality of a code inspection or response to code violations by municipal code officials as required by Executive Law § 381. In turn, petitioners sought a writ of mandamus directing respondent to promulgate new regulations establishing "meaningful minimum standards for inspection and enforcement of the Uniform Code." Respondent moved to dismiss the petition and Supreme Court granted the motion, determining, in sum and substance, that petitioners failed to establish a clear legal right to relief inasmuch as respondent had met the duty imposed by Executive Law § 381 by promulgating rules under 19 NYCRR part 1203 that govern the administration and enforcement of the Uniform Code. Clements appeals.[FN1]
"[I]t is axiomatic that a writ of mandamus is an extraordinary remedy that is available only in limited circumstances. Such remedy will lie only to enforce a clear legal right where the public official has failed to perform a duty enjoined by law. While mandamus to compel is an appropriate remedy to enforce the performance of a ministerial duty, it is well settled that it will not be awarded to [*2]compel an act in respect to which a public officer may exercise judgment or discretion" (Matter of Woodside Manor Nursing Home, Inc. v Zucker, 223 AD3d 94, 99 [3d Dept 2024] [internal quotation marks, brackets and citations omitted]; see Matter of Hoffmann v New York State Ind. Redistricting Commn., 217 AD3d 53, 60-61 [3d Dept 2023], affd ___ NY3d___, 2023 NY Slip Op 06344 [2023]). "To be entitled to such relief, petitioners must establish both a clear legal right to the relief demanded and a corresponding nondiscretionary duty — both are equally necessary for mandamus to lie" (Matter of Woodside Manor Nursing Home, Inc. v Zucker, 223 AD3d at 99). Said differently, "[m]andamus is not available to compel an officer or body to reach a particular outcome with respect to a decision that turns on the exercise of discretion or judgment" that could theoretically produce a variety of acceptable outcomes (Matter of Hussain v Lynch, 215 AD3d 121, 126 [3d Dept 2023] [internal quotation marks and citation omitted]; see Matter of Willows Condominium Assn. v Town of Greenburgh, 153 AD3d 535, 536 [2d Dept 2017]).
Acknowledging the lack of "a single, adequate, enforceable code establishing minimum standards for fire protection and construction, maintenance and use of materials in buildings" applicable to all areas of the state (Executive Law § 371 [1] [b]), the New York State Uniform Fire Prevention and Building Code Act (L 1981, ch 707, § 1) was adopted in order to, among other things, "provide a basic minimum level of protection to all people of the state from hazards of fire and inadequate building construction," which would allow for, and "[e]ncourage[,] local governments to exercise their full powers to administer and enforce" the code (Executive Law § 371 [2] [b], [d]; see Matter of Tarquini v Town of Aurora, 77 NY2d 354, 359 [1991]). With these underlying goals in mind, Executive Law § 381 requires respondent to "promulgate rules and regulations prescribing minimum standards for administration and enforcement of" the Uniform Code (Executive Law § 381 [1]; see Governor's Program Bill Mem at 2, 4, Bill Jacket, L 1981, ch 707 ["As important as the need for adequacy and uniformity may be, even the most stringent code is worth little if it is not enforced. In New York there is wide disparity in the quality of code enforcement. This stems from lack of trained enforcement personnel, lack of consistent qualifications for these positions, poor coordination between fire and building departments, and inability of local governments to afford enforcement programs. The problems are compounded by overlapping jurisdictions"]). In response to this mandate, respondent adopted 19 NYCRR part 1203, entitled "Uniform Code and the Energy Code: Minimum Standards for Administration and Enforcement" (19 NYCRR 1203.1 [a]; see 19 NYCRR 1203.5 [a]).
To begin, there is no dispute that, pursuant to the statutory scheme, the administration and enforcement of the Uniform Code is delegated [*3]to local governments — towns, cities and villages — which may choose to enforce on their own or in conjunction with another local government (see Executive Law § 381 [2]; see Executive Law § 371 [2] [c]-[e]; see also Governor's Approval Mem at 2, Bill Jacket, L 1981, ch 707 ["Enforcement of the uniform code would be a local responsibility"]; Governor's Program Bill Mem at 2, Bill Jacket, L 1981, ch 707 ["The uniform code will be administered and enforced locally"]). To this end, Clements takes the position that respondent has failed to set forth any "meaningful" standard for local governments to inspect and enforce compliance with the Uniform Code and that, "[i]nstead of establishing the required minimum statewide standards, the plain language of [r]espondent's own regulations and writings expressly and unlawfully delegate the duty to establish minimum statewide standards to the myriad municipalities across the state[ ]." In other words, as posited by Clements, the current regulatory scheme is the equivalent of providing no minimum standard at all, inasmuch as the regulations fail to identify what means must be used to remedy code violations so as to provide predictability in the process.
In our view, the statute does not require that respondent go to such specific lengths. Rather, the provisions that Clements assails specifically require respondent to "address the nature and quality of enforcement" by promulgating rules concerning the "adequacy of inspections, [and the] adequacy of means for insuring compliance with the [Uniform Code]" (Executive Law § 381 [1] [d], [e] [emphasis added]).[FN2] Turning briefly to inspections, we note that Clements' arguments do not suggest any disagreement with the manner of routine inspections that respondent has set forth in the regulations (see generally Executive Law § 381 [1] [a]; 19 NYCRR 1203.3 [b], [h]). Rather, her contentions are more specifically directed at the manner of inspections that occur in response to a tenant complaint, which are more aptly characterized as enforcement-based measures. In any event, we find that respondent has met his duty to set forth adequate means for addressing complaints, inasmuch as the regulations require localities to establish procedures "for addressing bona fide complaints" by requiring implementation of a process that "shall include, when appropriate, provisions for inspection of the buildings, structures, conditions, and/or activities alleged to be in violation" (19 NYCRR 1203.3 [i]; see also 19 NYCRR 1203.3 [f]).
As to enforcement, Clements' assertations amount to a belief that respondent is required to promulgate regulations that articulate the use of specific enforcement measures in every instance in which a code violation is identified. In this respect, Clements' arguments take issue with the fact that respondent's regulations do not require the issuance of an order of remedy upon identifying a code violation. She further suggests that the regulations must require [*4]that such means be first utilized to compel landlords to make the necessary repairs before condemnation or placarding of a building, which causes more harm than benefit to tenants. However, the statutory scheme does not require respondent to do so in order to meet the specific requirement to set forth minimum standards addressing the adequacy of enforcement measures as required by Executive Law § 381.[FN3] To this end, Executive Law § 382 (1) indicates that a local government is authorized to utilize the power to issue an order to remedy "[i]n addition to," and not limited by, any other power granted by law. More specifically, the language in the statute explicitly states that local authorities "shall have the power" to issue an order to remedy, not that they must exercise such power and pursue fines or imprisonment in every instance in which they seek to enforce to the Uniform Code (Executive Law § 382 [1] [emphasis added]). Consequently, respondent is not foreclosed from advising, within the regulatory framework, that local authorities are not required "to issue an order to remedy in a given situation where violations of the Uniform Code are found to exist if, in the judgment of the authority having jurisdiction, such violations can be addressed adequately by the use of other enforcement tools or by other means" (19 NYCRR 1203.5 [g]). Further, that the regulations provide other adequate means for addressing code violations, such as notices of violation, appearance tickets, civil penalties and, under certain circumstances, "condemning and/or placarding a building" (19 NYCRR 1203.5 [g] [9]; see 19 NYCRR 1203.5 [g] [1]-[11]), does not establish that respondent has not promulgated adequate remedies for addressing code violations as required.
Finally, within the framework of these various provisions, respondent must undertake a review of the manner in which localities are administering and enforcing the Uniform Code. To this end, a local government must provide a report of its activities relative to administration and enforcement (see 19 NYCRR 1203.4 [a]) and respondent may compel such local government to abide by the minimum standards provided in respondent's regulations (see Executive Law § 381 [4]). With this in mind, we note Clements' argument that the regulatory language requiring "[e]very authority having jurisdiction responsible for administration and enforcement of the Uniform Code [to] exercise its powers in due and proper manner" (19 NYCRR 1203.2 [d]) is insufficient to actually set a standard through which those local governments must perform their inspection and enforcement functions. However, by providing the means to effectuate the statutory goals and deeming certain actions as adequate, respondent has provided the framework through which those localities must act. Whether the means utilized are effective or whether localities are doing so properly is beyond the scope of our review concerning the specific arguments raised and relief sought [*5]in this proceeding.
All told, the relief sought by Clements and the other petitioners, in a practical sense, is ultimately predicated on a disagreement with the content of the regulations, conflating the mandate requiring promulgation of standards of "inspection" and "enforcement" with a duty to ensure that repairs are made. The latter is the aspirational goal of inspection and enforcement, but the means of reaching those ends are by no means promised and, to the extent that they are deemed adequate, such determinations are a discretionary assessment (see Matter of Woodside Manor Nursing Home, Inc. v Zucker, 223 AD3d at 99-100). To that end, the specific examples presented in Clements' and amici's briefs paint a compelling picture of the legislation's failure to meet one if its primary goals: the protection of tenants from unscrupulous landlords who avoid their obligation to properly maintain their properties in conformance with the Uniform Code. Indeed, we share the sentiment of our dissenting colleagues relative to Clements' specific experience, which in our view reflects that even the use of an order to remedy may ultimately fail to compel a landlord to perform necessary repairs. However, it does not follow that the deficient conditions in Clements' apartment would have been remedied, and condemnation of the building avoided, had local officials fined or imprisoned her landlord as permitted in Executive Law § 382 (2). The fact that enforcement of the Uniform Code may on occasion result in the replacement of one prominent concern — inadequate and unsafe housing — with another — rendering tenants of these buildings homeless — suggests that the legislation may be falling short of its intended goals (see generally Matter of Brown v City of Schenectady, 209 AD3d at 133-135). Nevertheless, the ineffectiveness of the statutory scheme ultimately demands a legislative fix rather than the relief sought in this proceeding, as it is the content of the regulations promulgated in accordance with the mandates of the statute that is seemingly insufficient to meaningfully protect the public from unsafe housing conditions brought on by derelict landlords. As such, we are constrained to find that the extraordinary relief of mandamus cannot be used to rectify the policy shortcomings that Clements has identified in this proceeding (see Matter of Shaw v King, 123 AD3d 1317, 1319 [3d Dept 2014]; Matter of Brown v New York State Dept. of Social Servs., 106 AD2d 740, 741 [3d Dept 1984], lv denied 65 NY2d 604 [1985]; Matter of City of New York v New York State Dept. of Envtl. Conservation, 89 AD2d 274, 277 [3d Dept 1982]; see generally Alliance to End Chickens as Kaporos v New York City Police Dept., 32 NY3d 1091, 1093 [2018], cert denied 587 US ___, 139 S Ct 2651 [2019]).
Egan Jr., J.P., and Mackey, J., concur.
Lynch, J. (dissenting).
We respectfully dissent. Pursuant to Executive Law § 381 (1), respondent "shall promulgate rules and regulations prescribing minimum [*6]standards for administration and enforcement of" the New York State Uniform Fire Prevention and Building Code (hereinafter the Uniform Code). To that end, respondent promulgated rules set forth in 19 NYCRR part 1203, entitled "Uniform Code: Minimum Standards for Administration and Enforcement." The crux of this dispute is whether these regulations fulfill respondent's statutory mandate as to enforcement.
In this CPLR article 78 proceeding, petitioners seek a writ of mandamus compelling respondent to "establish meaningful minimum standards for inspection and enforcement of the Uniform Code, particularly in rental properties." The majority has correctly stated the well-settled principle that mandamus serves to compel the performance of a ministerial duty, not a discretionary act. "What must be distinguished, however, are those acts the exercise of which is discretionary from those acts which are mandatory but are executed through means that are discretionary" (Klostermann v Cuomo, 61 NY2d 525, 539 [1984]). To illustrate, "when a town council is directed by statute to designate up to four newspapers having the largest circulation for the purpose of receiving city advertising, the court can compel the council to execute its statutory duty, but it may not direct the particular papers to be named" (id.). That analogy is particularly apt here, for respondent must adopt minimum enforcement standards, while exercising discretion as to what the standards should be. The concern petitioners raise is whether the adopted regulations actually set a minimum standard for enforcement relative to code violations.
Under the statutory structure, local governments — cities, towns and villages — are tasked with enforcing the Uniform Code, albeit a local government may opt out of that obligation (see Executive Law § 381 [2]; Matter of Brown v City of Schenectady, 209 AD3d 128, 132-133 [3d Dept 2022]). To that end, local governments are imbued with statutory authority to remedy a code violation. Executive Law § 382, entitled "Remedies," provides that "every local government . . . shall have the power to order in writing the remedying of any condition found to exist in, on or about any building in violation of the [Uniform Code] and to issue appearance tickets for violations" (Executive Law § 382 [1]). Violations "shall be punishable by a fine . . . or imprisonment not exceeding one year, or both" (Executive Law § 382 [2]). Having the power to enforce compliance with the Uniform Code, however, does not mean actual enforcement will ensue. And that is the problem in this case.
In directing respondent to prescribe minimum enforcement standards, Executive Law § 381 specifies that "[s]uch rules and regulations shall address the nature and quality of enforcement and shall include, but not be limited to . . . adequacy of inspections . . . [and] adequacy of means for ensuring compliance" (Executive Law § 381 [1] [d], [e]). Pursuant to 19 NYCRR 1203.2 (a), every involved local government [*7]"shall establish a code enforcement program to provide for such . . . enforcement." In doing so, the only regulatory standard is that a local government "shall exercise its powers in due and proper manner" (19 NYCRR 1203.2 [d]). In our view, the "due and proper manner" directive is generic in nature and would govern the conduct of all public officials as a matter of course. "Prescribe" means "to lay down a rule: specify with authority" (Merriam-Webster.com Dictionary, prescribe [https://www.merriam-webster.com/
dictionary/prescribe]). Moreover, the statutory directive is to prescribe a minimum enforcement standard that addresses "the nature and quality of enforcement" — adding a further layer of specificity (Executive Law § 381 [1]). 19 NYCRR 1203.2 (d) fails to satisfy that statutory mandate.
Insofar as inspections attendant a code violation complaint are concerned, we do agree with the majority that 19 NYCRR 1203.3 (i) prescribes a viable minimum standard. That regulation requires a local government to have a procedure in place to respond to such complaints, including a provision for inspections. Enforcement, however, is another matter.
The regulation implementing Executive Law § 382 sets a 30-day timeline for compliance with an order to remedy (see 19 NYCRR 1203.5 [a], [c]), but specifies that "[n]othing in this section shall be construed as requiring an authority having jurisdiction to issue an order to remedy in a given situation where violations of the Uniform Code are found to exist if, in the judgment of the authority having jurisdiction, such violations can be addressed by the use of other enforcement tools or by other means" (19 NYCRR 1203.5 [g]). This qualifying language effectively defers to the involved local government as to how and/or whether to proceed with addressing a code violation. Respondent's own administrative guide concedes as much, stating: "[a]s the minimum standards impose no requirements pertaining to procedures for correcting code violations in the absence of voluntary compliance, this is a feature of a local enforcement program which is left to the discretion of local officials" (Administration and Enforcement of the Uniform Fire Prevention and Building Code and the State Energy Conservation Construction Code, New York Department of State, Division of Local Government Services at 23 [reprinted 2023], available at https://dos.ny.gov/system/files/documents/2023/02/administration-and-enforcement-of-the-uniform-code-2302_0.pdf [last accessed Feb. 29, 2024]). While respondent has a statutory obligation to take into account the impacts on and reaction of local governments to adopted regulations (see Executive Law § 381 [1]), such complete deference does not comport with respondent's statutory obligation to actually specify a minimum enforcement standard.
The impact of such regulatory deference is vividly illustrated by the experience of petitioner Keionzie Clements. After Clements filed a complaint for a variety of concerns[*8], including a contention that the bathroom sink was on the floor, the Village of Dryden, Tompkins County, promptly inspected the premises in accord with 19 NYCRR 1203.3 (i) and issued a "Notice of Violation Order to Remedy" dated June 16, 2021, directing the property owner to eliminate the violations by July 8, 2021. After a follow-up inspection on September 29, 2021, the Village issued a second "Notice of Violation Order to Remedy" requiring the elimination of the same violations and several others by October 28, 2021. A required periodic fire inspection was performed on October 15, 2021, resulting in a third "Notice of Violation Order to Remedy" identifying multiple fire hazards. Notably, the bathroom sink was still not operational. The property owner was directed to eliminate the violations by November 18, 2021. Despite that directive, on October 27, 2021, the Village ordered all tenants to vacate the premises by October 31, 2021, while scheduling a hearing on November 9, 2021 for any person seeking to contest the order (see Matter of Brown v City of Schenectady, 209 AD3d at 131).
Where a property is unsafe, a local government is authorized to placard a building (see 19 NYCRR 1203.3 [f]; 1203.5 [g] [9]). That said, the glaring problem here is that, during Clements' five-month saga, the property owner completely disregarded the Village directives to repair the identified property defects and yet no enforcement steps were taken beyond repeated orders to remedy the violations. The end result is that the property owner was not held accountable and the tenants were removed. That is the dramatic outcome petitioners seek to avoid by compelling respondent to implement minimum enforcement standards that require a local government to actually utilize its enforcement authority. Petitioners have identified a gap in the regulations, which sanction complete deference to the involved local government as to actual enforcement. Given this regulatory gap, mandamus to compel is an available remedy in this proceeding. As such, Supreme Court erred in granting respondent's motion to dismiss the petition.
Clark, J., concurs.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: This Court granted leave to four legal services organizations to file a joint amici curiae brief in support of Clements' appeal.

Footnote 2: While the statutory language requires that the rules and regulations promulgated by respondent address various specific aspects related to "the nature and quality of enforcement," it permits respondent to provide other rules to address other aspects not explicitly set forth (Executive Law § 381 [1] [a]-[j]).

Footnote 3: As noted by respondent, the use of condemnation or placarding may only be done after providing a tenant opportunity to be heard, except where the condition supporting such action creates an "imminent danger" (2020 Property Maintenance Code of NY St § 103.2.1; see Matter of Brown v City of Schenectady, 209 AD3d 128, 134-135 [3d Dept 2022]; see also 2020 Property Maintenance Code of NY St §§ 103, 107).